Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

Leon B. Greenfield (*pro hac vice*)
leon.greenfield@wilmerhale.com
Eric Mahr (*pro hac vice*)
eric.mahr@wilmerhale.com
Jeffrey Ayer (*pro hac vice*)
jeffrey.ayer@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Attorneys for Defendant
*Regal Entertainment Group*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

STARLIGHT CINEMAS,

Plaintiff,

vs.

REGAL ENTERTAINMENT GROUP and DOES 2 through 50, inclusive,

Defendants.

Case No. 2:14-cv-05463-R-AS

**DEFENDANT'S MOTION TO DISMISS ALL CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Hon. Manuel L. Real
Hearing date: 10/20/2014
Time: 10:00 a.m.
Courtroom: 8

# TABLE OF CONTENTS

Page(s)

SUMMARY OF ARGUMENT ........ 1

STARLIGHT'S ALLEGATIONS AND PROCEDURAL HISTORY ........ 2

ARGUMENT ........ 3

**I.** Starlight Fails to State a Claim Under the Cartwright Act ........ 4

**A.** Starlight Fails to Allege the Agreement Required for a Cartwright Act Claim ........ 5

**B.** Starlight Fails to Allege any Clearance Agreement Harmed Competition ........ 8

**1.** Any Clearance Agreement as Alleged by Starlight is Lawful Under Established Precedent Governing Clearances ........ 9

**2.** Starlight Has Failed to Allege Harm to Competition in a Cognizable Antitrust Market ........ 11

**C.** Starlight Cannot Save Its Cartwright Act Claim by Vague References to "Circuit Dealing" ........ 15

**II.** Starlight's State Law Claims Also Fail ........ 16

**A.** The Complaint Fails to Allege a UCL Claim ........ 16

**B.** Starlight States No Viable Intentional Interference With Prospective Economic Advantage Claim ........ 17

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) .......... 3, 4, 8

*Big Bear Lodging Association v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999) .......... 11, 12

*Brantley v. NBC Universal, Inc.*, 675 F.3d 1192 (9th Cir. 2012) .......... 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) .......... 13

*Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) .......... 16, 17

*Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175 (App. 2001) .......... 4, 17

*Chicago Title Insurance Co. v. Great Western Financial Corp.*, 69 Cal. 2d 305 (1968) .......... 4

*Concord Associates, L.P. v. Entertainment Properties Trust*, No. 12-1667, 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) .......... 12

*County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148 (9th Cir. 2001) .......... 16

*Credit Bureau Services, Inc. v. Experian Information Solutions, Inc.*, No. 12-2146, 2013 U.S. Dist. LEXIS 94313 (C.D. Cal. June 28, 2013) .......... 5

*Drum v. San Fernando Valley Bar Association*, 106 Cal. Rptr. 3d 46 (App. 2010) .......... 17

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U. S. 336 (2005) .......... 4

*E & L Consulting, Ltd. v. Doman Industries Ltd.*,
472 F.3d 23 (2d Cir. 2006) .......... 10

*EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) .......... 4

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
131 Cal. Rptr. 3d 519 (App. 2011) .......... 15

*G.H.I.I. v. MTS, Inc.*,
195 Cal. Rptr. 211 (App. 1983) .......... 4, 6, 7

*Jacobs v. Tempur-Pedic, Int'l, Inc.*,
626 F.3d 1327, 1343-44 (11th Cir. 2010) .......... 8

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .......... 3, 5

*Kingray, Inc. v. National Basketball Association, Inc.*,
188 F. Supp. 2d 1177 (S.D. Cal. 2002) .......... 10

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......... 17

*Langer Juice Co. v. Yantai North Andre Juice Co.*,
No. 06-1354, 2006 U.S. Dist. LEXIS 97212 (C.D. Cal. Aug. 16, 2006) .......... 8

*Les Shockley Racing, Inc. v. National Hot Rod Association*,
884 F.2d 504 (9th Cir. 1989) .......... 13, 14

*Logtale, Ltd. v. IKOR, Inc.*,
No. 11-5452, 2013 WL 4427254 (N.D. Cal. Aug. 14, 2013) .......... 18

*Marsh v. Anesthesia Services Medical Group, Inc.*,
132 Cal. Rptr. 3d 660 (App. 2011) .......... 17

*Mathias v. Daily News, L.P.*,
152 F. Supp. 2d 465 (S.D.N.Y. 2001) .......... 13

*McGlinchy v. Shell Chemical Co.*,
845 F.2d 802 (9th Cir. 1988) .......... 8

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002 (N.D. Cal. 2013) .................... 11

*Pardi v. Kaiser Permanente Hospital*, 389 F.3d 840 (9th Cir. 2004).................... 17

*Ralph C. Wilson Industries, Inc. v. American Broadcasting Cos.*, 598 F. Supp. 694 (N.D. Cal. 1984), *aff'd*, 794 F.2d 1359 (9th Cir. 1986).................... 10

*Reading International, Inc. v. Oaktree Capital Management LLC*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003).................... 15, 16

*Reading International, Inc. v. Oaktree Capital Management LLC*, No. 03-1895, 2007 WL 39301 (S.D.N.Y. Jan. 8, 2007) ............... 9, 10, 11, 15

*RealPage, Inc. v. Yardi Systems, Inc.*, 852 F. Supp. 2d 1215 (C.D. Cal. 2012).................... 12

*Reid Brothers Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292 (9th Cir. 1983).................... 9

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987).................... 10

*Schine Chain Theatres, Inc. v. United States*, 334 U.S. 110 (1948) .................... 15

*Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, No 97-5499, 2004 WL 691680 (S.D.N.Y. Mar. 31, 2004), *aff'd*, 124 F. App'x 73 (2d Cir. 2005).................... 15

*Somerville v. Stryker Orthopaedics*, No. 08-02443, 2009 U.S. Dist. LEXIS 3052 (N.D. Cal. Jan. 16, 2009).................... 5

*Stanislaus Food Products Co. v. USS-POSCO Industries*, No. 09-00560, 2013 U.S. Dist. LEXIS 21744 (E.D. Cal. Feb. 15, 2013).................... 16

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008).................... 16, 18

*Tanaka v. University of Southern California*,
252 F.3d 1059 (9th Cir. 2001)........................................................11, 12

*Theee Movies of Tarzana v. Pacific Theatres, Inc*.,
828 F.2d 1395 (9th Cir. 1987)........................................................7, 9, 10

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
No. 12-2582, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013)............................4

*United States v. Colgate & Co.*,
250 U.S. 300 (1919)........................................................................6

*United States v. Griffith*,
334 U.S. 100 (1948)........................................................................15

*United States v. Paramount Pictures*,
334 U.S. 131 (1948)........................................................................9, 15

*West Boylston Cinema Corp. v. Paramount Pictures Corp.*,
No. 98-00252, 2000 Mass. Super. LEXIS 628 (Sept. 18, 2000)..................10

*Youst v. Longo*,
43 Cal. 3d 64 (1987)........................................................................17

**STATUTES**

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200...............3, 16

Cartwright Act, Cal. Bus. & Prof. Code § 16720...............................................3

Sherman Act, 15 U.S.C. § 1 ..........................................................................4

Defendant Regal Entertainment Group ("Regal") respectfully moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint of Plaintiff Starlight Cinemas, Inc. ("Starlight" or "Plaintiff") in its entirety for failure to state a claim.

**SUMMARY OF ARGUMENT**

California's Cartwright Act antitrust statute is designed to protect the competitive process and California consumers—not to provide a refuge for competitors that simply fail to prevail in the marketplace. Rather than compete with its Dos Lagos theatre against the Regal Corona Crossing theatre on the merits, Starlight now seeks to battle with Regal in the courts. But Plaintiff, not surprisingly, is unable to state an actual legal claim against Regal. Through its cursory, eight-page Complaint, Starlight fails to allege facts plausibly suggesting anything other than that it has not fared as well as it would have liked in free and fair competition to license movies from film distributors. Such allegations are insufficient as a matter of law to state a claim under the Cartwright Act or any of the other state laws Starlight has invoked.

First, Starlight claims competitive injury from supposed "clearance" agreements under which distributors purportedly agreed with Regal not to license simultaneously to the Starlight Dos Lagos first run films that it licenses to the Regal Corona Crossings. But Starlight has failed to allege any facts plausibly suggesting agreements between distributors and Regal, as opposed to independent business decisions by each party.

Second, even if Starlight could allege facts supporting an agreement, under Ninth Circuit precedent, clearances are perfectly lawful in circumstances like those alleged here, where two theatres—Regal's Corona Crossing and Starlight's Dos Lagos—directly compete with each other.

Third, Starlight fails to allege harm to competition in a cognizable antitrust market, as required to state a rule of reason claim under the Cartwright Act.

Fourth, to the extent Starlight seeks to allege a separate "circuit dealing" claim or that supposed clearance agreements were the fruit of circuit dealing, it fails to allege any facts supporting such a claim.

Finally, Starlight's claims under the California Unfair Competition Law and for common law tortious interference with prospective business relations also fail. As to the former, Starlight fails to state a claim because it does not allege unfair, fraudulent, or illegal business practices by Regal. As to the latter, Starlight fails to allege (i) any wrongful act by Regal or (ii) that it would have realized an economic advantage but for Regal's alleged conduct.

For these reasons, the Court should dismiss Starlight's Complaint for failure to state a claim.

**STARLIGHT'S ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Starlight and Regal operate movie theatres in Corona, California. (Compl. ¶¶ 6, 18.) A Starlight theatre, the Dos Lagos Stadium Theatre, is located at 2710 Lakeshore Drive. (*Id*. ¶ 6.) A Regal theatre, the Corona Crossings 18 Theatre, is located at 2650 Tuscany Street. (*Id*. ¶ 18.) Given the theatres' proximity, the Dos Lagos and Corona Crossing theatres compete with each other for movie patrons. (*Id*. ¶ 6.)

Starlight and Regal license movies for their respective theatres from film distributors. (*See* Compl. ¶ 10.) According to Starlight, one or more film distributors, which it does not identify, license first-run, feature-length films in the Corona area pursuant to "clearances," under which the unidentified distributor or

---

[1] Although recited here, Regal does not concede the truth any of Plaintiff's allegations.

distributors agree that either the Dos Lagos or the Corona Crossing theatre, but not both, may exhibit a particular film during a particular time period. (*Id*. ¶¶ 15, 24.)

Starlight filed its Complaint on June 17, 2014, alleging that Regal demanded clearances from one or more (unidentified) film distributors, which then granted Regal's requests. (Compl. ¶ 24.) Starlight claims that the unidentified film distributors entered into such clearance agreements because Regal operates a large theatre circuit and thus has "immense buying power" (*id*. ¶ 1), and that Regal's conduct regarding clearance agreements "violates antitrust principles" (*id*. ¶ 25). Starlight claims that Regal's conduct violates the Cartwright Act (Cal. Bus. & Prof. Code § 16720), violates California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), and constitutes common law intentional interference with prospective economic advantage.

On July 14, 2014, Regal removed this action to this Court based on diversity jurisdiction.

## ARGUMENT

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (courts should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Conclusory allegations, "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s]" "will not do." *Twombly*, 550 U.S. at 555, 557; *see also Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047-48 (9th Cir. 2008) (dismissing claims where plaintiffs "pleaded only ultimate facts, such as conspiracy, and legal conclusions" and "failed to plead the necessary evidentiary facts to support their conclusions"). Especially in the antitrust context, given the danger that a plaintiff with a "largely groundless claim" could impose time-

consuming and expensive discovery on the defendant, with the resultant "*in terrorem* increment . . . of the settlement value," the complaint must possess "enough heft" to create a plausible basis to believe the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 557-58 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U. S. 336, 347 (2005)); *see also EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1080 (C.D. Cal. 2010).

**I. Starlight Fails to State a Claim Under the Cartwright Act**

California's Cartwright Act is the California law analog to Section 1 of the Sherman Act, 15 U.S.C. § 1. "[D]ecisions under the latter are applicable to the former." *G.H.I.I. v. MTS, Inc.*, 195 Cal. Rptr. 211, 216 (App. 1983); *see also Chavez v. Whirlpool Corp.*, 113 Cal. Rptr. 2d 175, 179 (App. 2001) (explaining courts construing the Cartwright Act look to Sherman Act precedent for guidance because both share "similar language and objectives").

To state a Cartwright Act claim, a complaint must sufficiently allege "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Chicago Title Ins. Co. v. Great W. Fin. Corp.*, 69 Cal. 2d 305, 316 (1968) (internal quotation marks omitted). Stated another way, a complaint must contain adequate (a) "allegation of a conspiracy or combination to restrain trade," and (b) "serious harmful competitive impact" from the restraint. *G.H.I.I.*, 195 Cal. Rptr. at 217, 220; *see also, e.g., Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-2582, 2013 WL 368365, at *9 (N.D. Cal. Jan. 29, 2013) (dismissing Cartwright Act counterclaims for failure adequately to allege harm to competition); *Chavez*, 113 Cal. Rptr. 2d at 182 (granting motion to dismiss after finding that "[t]he facts pleaded [were] insufficient to establish a coerced agreement in violation of the Cartwright Act").

Starlight's Complaint falls far short of these requirements. First, the Complaint fails to satisfy the minimum requirements to allege an agreement involving Regal. Second, even if Plaintiff had adequately pled an agreement, Starlight has also failed adequately to allege that any such agreement has caused harm to competition in a relevant market.

**A. Starlight Fails to Allege the Agreement Required for a Cartwright Act Claim**

The gravamen of Starlight's Cartwright Act claim is that Regal entered into clearance agreements with film distributors. To overcome a motion to dismiss, Starlight must allege facts making it plausible that Regal did, in fact, enter into agreements with film distributors preventing the distributors from licensing to the Starlight Dos Lagos theatre films that will simultaneously show at Regal's nearby Corona Crossing theatre. Starlight has failed to do so.

To begin, Plaintiff does not even allege basic facts about the purported agreement[s] involving Regal. Starlight fails to identify even a *single distributor* with which Regal allegedly entered into such agreements, much less where and when any such agreement occurred or the terms of the alleged agreements. *See Kendall*, 518 F.3d at 1048 (to overcome a Rule 12(b)(6) motion a complaint must "answer the basic questions: who, did what, to whom (or with whom), where, and when?"). Courts commonly dismiss Cartwright Act claims where the plaintiff fails to allege these basic facts. *See, e.g.*, *Credit Bureau Servs., Inc. v. Experian Info. Solutions, Inc.*, No. 12-2146, 2013 U.S. Dist. LEXIS 94313, at *21-22 (C.D. Cal. June 28, 2013) (dismissing price-fixing complaint that failed to allege who participated in the wrongful agreements); *Somerville v. Stryker Orthopaedics*, No. 08-02443, 2009 U.S. Dist. LEXIS 3052, at *7-9 (N.D. Cal. Jan. 16, 2009) (dismissing claim where plaintiff failed to allege "facts indicating the identities of any of the [alleged co-conspirators]" or the "terms of any such agreements"). The

Complaint's failure to allege these threshold requirements defeats Starlight's Cartwright Act claim.

Further, California's Cartwright Act only reaches conduct taken pursuant to an *agreement* involving more than one party. Unilateral conduct is outside the reach of the Act. *G.H.I.I.*, 195 Cal. Rptr. at 217, 218. But Starlight fails to allege facts that plausibly suggest that any film distributor decided not to license a film to play at the Dos Lagos theatre while that film was playing at the Regal Corona Crossing theatre because of an agreement between Regal and a distributor—rather than based on its own unilateral business decision. "It is well[-]settled that the antitrust laws do not preclude a trader from unilaterally determining the parties with whom it will deal and the terms on which it will transact business." *Id.* at 218 (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919) (upholding dismissal of Cartwright Act claim)).

Starlight baldly asserts—without any supporting factual allegations—that it would have been in film distributors' independent economic interest to license the same film simultaneously to both the Starlight Dos Lagos and Regal Corona Crossings, but Regal used "buying power" from the size of its theatre circuit to "combine with and coerce [unidentified] film distributors" to enter into clearance agreements for its Corona Crossings theatre. (Comp. ¶¶ 1, 7, 16.) But such generic, unsupported allegations regarding buying power and coercion are insufficient to plead an agreement between a retailer and a distributor under the Cartwright Act. *See G.H.I.I.*, 195 Cal. Rptr. at 217, 219.

In *G.H.I.I.*, the plaintiff, an independent record store, claimed that three large rival retail record store chains had coerced distributors of records and cassettes into entering illegal supply agreements that favored the chains and harmed the independent record store. *Id.* at 214-16. In upholding dismissal of Cartwright Act claims against two of the chains, the California Court of Appeals

found that the plaintiff had made "no specific allegations of coercion," but rather had asserted only "that these two [chains] employed economic leverage to convince distributors to grant them price discounts and other [preferential] terms." *Id.* at 219. Such general allegations, the court held, were insufficient to plead any agreement between the record store chains and the record and tape distributors. *Id.*[2]

The same is true here. Starlight alleges that Regal has "immense buying power" "from the large number of its theatres and screens in numerous markets in the United States." (Compl. ¶ 1; *see also id.* ¶¶ 16, 17.) But it does not make a single specific allegation that Regal has used its supposed economic power to coerce *any* distributor—let alone a specifically identified distributor—into entering any clearance agreement.

Starlight also alleges that distributors generally use a "wide release" strategy and wish to have their films exhibited "in as many screens and in as many theatres as possible." (Compl. ¶ 16; *see also id.* ¶ 24.) But that is insufficient to support an inference that the distributors were acting against their own self-interest in not licensing their films to play simultaneously at both the Regal Corona Crossing and the Starlight Dos Lagos theatres, much less that distributors entered into agreements with Regal not to show their movies at the Dos Lagos theatre. Starlight does not allege—nor could it—that Corona Crossings' ***18*** screens are insufficient to provide plentiful exposure and playing times for any of distributors' films in the area from which the theatre draws. *See, e.g.*, *Theee Movies of Tarzana v. Pacific Theatres, Inc.*, 828 F.2d 1395, 1399-1400 (9th Cir. 1987) (finding that

2 By contrast, the court in *G.H.I.I.* sustained a Cartwright Act claim based on alleged agreements between a third record store chain and record and tape distributors. 195 Cal. Rptr. at 219. As to that chain, however, the complaint contained particularized factual allegations that the chain made threats and engaged in a boycott against distributors to force them to enter into anticompetitive agreements. *Id.*

clearances are lawful means "to reach the largest number of viewers with the smallest number of movie prints").

Finally, Starlight complains that distributors have rejected some unspecified number of offers for film licenses on terms that "on information and belief" were superior to those offered by Regal. (Compl. ¶ 23.) But the distributors, of course, could have rejected Starlight's offers for any number of independent business reasons—*e.g.*, inefficiencies inherent in licensing the same film simultaneously to two nearby theatres or a belief that the film would perform better at the Regal Corona Crossing theatre—and these bald allegations are insufficient to allege any clearance agreements between Regal and distributors. *See Twombly*, 550 U.S. at 566-67, 570 (dismissing complaint where allegations were as consistent with independent business behavior as collusion); *Jacobs v. Tempur-Pedic, Int'l, Inc.*, 626 F.3d 1327, 1343-44 (11th Cir. 2010) (dismissing complaint where plaintiff failed to allege facts plausibly suggesting that defendant acted in consort with distributors rather than unilaterally, consistent with economic self-interest).

**B. Starlight Fails to Allege any Clearance Agreement Harmed Competition**

Even assuming (incorrectly) that Starlight had properly alleged a clearance agreement between Regal and a distributor, its Cartwright Act claim should still be dismissed for failure to allege that the agreement harmed competition. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) (dismissing Sherman Act and Cartwright Act claims for failure to allege injury to competition); *Langer Juice Co. v. Yantai N. Andre Juice Co.*, No. 06-1354, 2006 U.S. Dist. LEXIS 97212 (C.D. Cal. Aug. 16, 2006) (similar); *see also Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197-1200 (9th Cir. 2012) (dismissing Sherman Act Section 1 claim for failure to allege harm to competition).

As explained below, in light of the well-established pro-competitive benefits of clearance agreements—under which competing theatres do not exhibit the same film at the same time—courts have routinely upheld such arrangements as lawful except in very narrow circumstances not alleged here. Moreover, Starlight has in any event failed to allege any cognizable harm to competition in a properly defined market, which is a required component for any Cartwright Act claim based on a clearance.

**1. Any Clearance Agreement as Alleged by Starlight is Lawful Under Established Precedent Governing Clearances**

Clearances are vertical arrangements—*i.e.*, between parties at different levels of the distribution chain—and are thus evaluated under the rule of reason. *Theee Movies of Tarzana*, 828 F.2d at 1398. "To establish a cause of action for an unreasonable restraint of trade under the rule of reason, the plaintiff must show: (1) '[a]n agreement among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition.'" *Id.* at 1399 (quoting *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1296 (9th Cir. 1983)).

In the case of movie theatre clearances, antitrust courts have extensive experience in evaluating the arrangements, and, absent extraordinary circumstances which the Complaint does not allege, have found them lawful. Courts recognize there are sound business reasons for clearances and they are unlikely to harm competition. *Theee Movies of Tarzana*, 828 F.2d at 1399-1400 (noting clearance agreements promote optimal distribution of movies at efficient cost); *United States v. Paramount Pictures*, 334 U.S. 131, 145 (1948) (stating clearance provides exhibitors assurances that their expected income will not be diminished by subsequent runs of the same film); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03- 1895, 2007 WL 39301, at *14 (S.D.N.Y. Jan. 8, 2007)

(“*Reading II*”) (recognizing clearance agreements are commonly used in the film industry to ensure that a particular theatre’s income will not be reduced because a competing theatre is showing the same film) (citing *Paramount Pictures*, 334 U.S. at 145).

Accordingly, courts in the Ninth Circuit and elsewhere have held that clearances are lawful “reasonable restraints of trade . . . when the theat[res] are in substantial competition, and the clearances are used to assure the exhibitor that the distributor will not license a competitor to show the movie at the same time or so soon thereafter that the exhibitor’s expected income will be greatly diminished.” *Theee Movies of Tarzana*, 828 F.2d at 1399; *see also id.* (“[T]he whole system of runs and clearances . . . purposely, and legitimately, discriminates between competing exhibitors.”) (internal quotation marks omitted); *Reading II*, 2007 WL 39301, at *15 (granting summary judgment where plaintiff admitted theatres were in substantial competition); *Ralph C. Wilson Indus., Inc. v. American Broadcasting Cos.*, 598 F. Supp. 694, 705 (N.D. Cal. 1984) (holding clearance agreements did not violate antitrust laws where plaintiff and defendant television stations were in substantial competition), *aff’d*, 794 F.2d 1359 (9th Cir. 1986); *West Boylston Cinema Corp. v. Paramount Pictures Corp.*, No. 98-00252, 2000 Mass. Super. LEXIS 628, at *53 (Sept. 18, 2000) (concluding clearance agreements were not an

unreasonable restraint on trade where there was substantial competition between affected movie theatres).[3]

Here, the Complaint affirmatively acknowledges that the Starlight Dos Lagos and Regal Corona Crossings theatres are in substantial competition with each other. (Compl. ¶ 6 ("Starlight competes with Regal in the Corona area"); *id.* at 4 (describing "THE COMPETING THEATRES").) That admission is fatal to Starlight's claims as a matter of law. Put simply, even assuming that Starlight had adequately alleged an agreement, it has alleged nothing more than a garden-variety, completely lawful clearance arrangement that easily passes muster under Ninth Circuit and other precedent.

### 2. Starlight Has Failed to Allege Harm to Competition in a Cognizable Antitrust Market

Starlight's Complaint should also be dismissed because it fails to allege harm to competition in a cognizable antitrust market—a required element for a claim under the Cartwright Act. *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1010-11 (N.D. Cal. 2013) (dismissing Cartwright

---

[3] The courts' rejection of challenges to alleged clearance agreements is consistent with their status as a type of exclusive distribution arrangement (*i.e.*, a supplier appoints only a single distributor in a given area), which is generally lawful. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987) ("[E]xclusive distributorship is not, standing alone, a violation of antitrust laws, and in most circumstances does not adversely affect competition in the market"). Courts regularly dismiss challenges to exclusive distribution arrangements for failure adequately to allege actual harm to competition. *See, e.g.*, *id.* at 735-36; *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30-31 (2d Cir. 2006) (upholding dismissal of exclusive distributorship claim because "[t]he complaint simply does not allege . . . that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market" (internal quotation marks omitted)); *Kingray, Inc. v. National Basketball Ass'n, Inc.*, 188 F. Supp. 2d 1177, 1197 (S.D. Cal. 2002) (dismissing exclusive distributorship allegations because plaintiffs made only conclusory allegations and failed to sufficiently allege actual harm to competition).

Act claim because plaintiff failed to sufficiently allege harm to competition in relevant market). Starlight has failed to allege a cognizable antitrust market, let alone harm to competition in such a market.

**a) Starlight Fails to Adequately Allege an Antitrust Market**

To state a rule of reason claim, a complaint must identify the relevant geographic and product markets in which the parties compete and competitive effects can be evaluated. *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104-05 (9th Cir. 1999); *Reading II*, 2007 WL 39301, at *11 (similar). "Failure to identify a relevant market is . . . ground[s] for dismissing an [antitrust claim]." *Tanaka v. University of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (affirming dismissal because plaintiff's alleged geographic market of Los Angeles was not an appropriately defined market); *see also RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1224-25 (C.D. Cal. 2012) (dismissing Cartwright Act claim for, among other things, failure to adequately allege relevant market).

Starlight devotes a total of one sentence to positing a relevant geographic market consisting of "Corona, California in which the Starlight Theatre and the Regal Theatre operate." (Compl. ¶ 20.) This "relevant market" is insufficient as a matter of law.

A geographic market is the "area of effective competition" where "buyers can turn for alternat[e] sources of supply." *Tanaka*, 252 F.3d at 1063 (internal quotation marks omitted). Starlight asserts that the relevant geographic market consists of Corona, California, but it alleges no facts to support this proposed market definition.

Plaintiff asserts that Starlight and Regal both operate in the alleged geographic market (Compl. ¶ 20), that Starlight competes with Regal "in the Corona area" (*id.* ¶ 6), and that both Starlight and Regal operate theatres with

mailing addresses in "Corona, California" (*id.*). But Starlight fails to allege—even in conclusory fashion—that theatres in Corona do not compete with other theatres in neighboring communities. This pleading deficiency is fatal to Starlight's Cartwright Act claim. *See Big Bear Lodging Ass'n*, 182 F.3d at 1105 (affirming dismissal of complaint where plaintiff baldly alleged a geographic market of Big Bear Valley but failed to allege facts suggesting that the region "is the area of effective competition in which buyers of these products can find alternative sources of supply, or that there are no other goods or services that are reasonably interchangeable . . . within this geographic market"); *Concord Assocs., L.P. v. Entertainment Properties Trust*, No. 12-1667, 2014 WL 1396524, at *16, *17 (S.D.N.Y. Apr. 9, 2014) (dismissing Sherman Act claim because "[a]mended [c]complaint alleges no plausible fact explaining why other areas within convenient transit of the population center . . . should be excluded" (internal quotation marks omitted)); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001) (dismissing Sherman Act claims because plaintiffs had "not provided any facts to support the conclusion that the effective area of competition should be drawn so narrowly").

**b) Plaintiffs Have Not Alleged Harm to Competition**

Even if Starlight had alleged a cognizable antitrust market, its Cartwright Act claim would still fail because it has not alleged that the supposed clearance agreements harmed competition in any such market. To show that a restraint is unreasonable, "[a] claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably. Rather, a claimant must, at a minimum, sketch the outline of [the injury to competition] with allegations of supporting factual detail." *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989).

Starlight alleges that *it* has been harmed by Regal's purported conduct, but that is insufficient to state a claim. The antitrust laws "were enacted for 'the protection of *competition*, not *competitors*.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (emphasis in original). Starlight claims that it has been unable to show the same films contemporaneously with Regal Corona Crossing. (Compl. ¶ 23.) But it does not allege any facts suggesting how its inability to exhibit films "day and date" with the Regal Corona Crossing theatre has harmed *consumers in a relevant market*. Plaintiff does not allege that Regal was able to charge higher admission prices for certain films because the Starlight Dos Lagos theatre was not also exhibiting the same film at the same time, or that moviegoers were unable to watch the films they wished to see. Instead, Starlight's references to harm to competition are, at best, cursory incantations of legal requirements. (*See id*. ¶¶ 1, 26.) Such bare allegations are insufficient as a matter of law to allege harm to competition in a relevant antitrust market. *Les Shockley Racing*, 884 F.2d at 509 (dismissing complaint where plaintiff did not allege facts outlining anticompetitive effects of defendant's conduct).

The *only* specific supposed harm to competition or consumers that Starlight tries to allege is that there may be some consumers who would have preferred to see a specific movie at the Starlight Dos Lagos theatre instead of Regal's Corona Crossing theatre. (Compl. ¶ 1 (stating the challenged conduct "deprived the public of choice with respect to the theatres in which they are able to see films").) But the fact that a clearance may mean that some moviegoers are not able to see their preferred film at their preferred theatre on a specific date does not represent cognizable harm to competition as a matter of law. It is nothing more than the natural consequence of a film distributor deciding, for good and sufficient business reasons, to license a film to some but not all theatres in a given area. As courts have explained:

> [T]he mere possibility that a consumer might have to see his or her first choice movie at his or her second choice theatre . . . is not an actionable restraint on trade. Every licensing agreement between an exhibitor and distributor will restrain trade to some extent, as licensing agreements necessarily entail that a film is shown at one theatre and not another. . . . But the mere fact that a consumer . . . might, for example, prefer to watch a film at [one theatre] has to instead go to another nearby theatre to see that film does not mean that there has been an actionable harm to consumer choice or competition.

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No 97-5499, 2004 WL 691680, at *10 (S.D.N.Y. Mar. 31, 2004), *aff'd*, 124 F. App'x 73 (2d Cir. 2005); *Reading II*, 2007 WL 39301, at *14 (similar). Starlight fails to allege that any conduct by Regal actually harmed *competition* in a relevant antitrust market, and the Complaint should be dismissed for that reason as well.

**C. Starlight Cannot Save Its Cartwright Act Claim by Vague References to "Circuit Dealing"**

In one paragraph, the Complaint baldy asserts that Regal's conduct "violates antitrust principles . . . that films be licensed on a film by film, theat[re] by theat[re] basis." (Compl. ¶ 25.) Although the pleadings are unclear, to the extent Starlight is alleging that Regal has engaged in "circuit dealing" or that Regal's supposed clearance agreements are the fruits thereof, any effort to allege circuit dealing is wholly inadequate to withstand a motion to dismiss.

Circuit dealing is the licensing of motion pictures on a theatre-chain-wide (or partial chain) basis, rather than on a theatre-by-theatre basis. *United States v. Griffith*, 334 U.S. 100, 102-03 (1948). The Supreme Court has explained that

circuit dealing may occur where a theatre chain combines its buying power across towns and negotiates film rentals on a chain-wide basis. *Schine Chain Theatres, Inc. v. United States*, 334 U.S. 110, 116-17 (1948); *Griffith*, 334 U.S. at 109; *see also Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 318 n.9 (S.D.N.Y. 2003) ("*Reading I*"); *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 131 Cal. Rptr. 3d 519, 525-26 (App. 2011) (stating circuit dealing is "generally characterized as 'the pooling of the purchasing power of an entire circuit in bidding for films'") (quoting *Paramount Pictures*, 334 U.S. at 154).

Here, Starlight fails to allege any facts suggesting that Regal has entered into a single film licensing agreement covering multiple theatres or otherwise tried to negotiate films on anything other than a theatre-by-theatre basis. That alone is fatal to any allegations of circuit dealing. *Reading I*, 317 F. Supp. 2d at 318 n.9 (refusing to credit allegations of circuit dealing because plaintiff failed sufficiently to allege facts satisfying elements of circuit dealing claim).

## II. Starlight's State Law Claims Also Fail

Plaintiff has also asserted a claim under California's Unfair Competition Law (UCL) (Cal. Bus. & Prof. Code § 17200) and for intentional interference with prospective economic advantage. (*See* Compl. ¶¶ 33-36; *id.* ¶¶ 37-44.) Both of these claims should be dismissed.

### A. The Complaint Fails to Allege a UCL Claim

To state a claim under the California UCL, a plaintiff must allege that the business act or practice in question is unlawful, unfair, or fraudulent.[4] *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008).

As discussed in section I, above, Starlight has failed to plead a Cartwright Act claim. Thus, it has also failed to allege any "unlawful" business act or practice for purposes of the UCL. *See, e.g.*, *Stanislaus Food Prods. Co. v. USS-POSCO*

---

[4] Starlight does not claim that Regal engaged in any fraudulent actions.

*Indus.*, No. 09-00560, 2013 U.S. Dist. LEXIS 21744, at *38 (E.D. Cal. Feb. 15, 2013) (concluding state law claims, including UCL claim, failed when Sherman Act and Cartwright Act claims failed) (citing *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001)).

Starlight also has failed to allege any "unfair" conduct by Regal. In the context of a lawsuit by a competitor, like here, the concept of "unfair" is limited to "conduct that threatens an incipient violation of an antitrust law, or violates [a] policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Here, the Complaint merely restates the elements of the California UCL. (Compl. ¶ 35.) Starlight does not claim that any purported conduct other than Regal's supposed Cartwright Act violation had effects "comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Chavez*, 113 Cal. Rptr. 2d at 184 (quoting *Cel-Tech*, 20 Cal. 4th at 187). Accordingly, Plaintiff's failure to allege a Cartwright Act violation defeats any UCL claim based on an "unfair" business act or practice. *See, e.g.*, *Chavez*, 113 Cal. Rptr. 2d at 184 (dismissing "unfair" UCL claim based on dismissal of Cartwright Act claim); *Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 52-53 (App. 2010) (same).

**B. Starlight States No Viable Intentional Interference With Prospective Economic Advantage Claim**

Starlight's claim for intentional interference with prospective economic advantage (Compl. ¶¶ 37-44) should also be dismissed. Intentional interference with prospective economic advantage requires an intentional, wrongful act by the defendant that is designed to disrupt an economic relationship between the plaintiff and a third party. *Pardi v. Kaiser Permanente Hosp.*, 389 F.3d 840, 852 (9th Cir.

2004) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)); *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 132 Cal. Rptr. 3d 660, 680 (App. 2011) (defining a "wrongful act[]" as one "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard") (internal quotation marks omitted). Here, the only wrongful act that Starlight attempts to allege is a Cartwright Act violation. Because Starlight has failed successfully to allege a Cartwright Act violation, its intentional interference claim fails as well.

Moreover, Starlight does not allege that "it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference," which is a prerequisite for an intentional interference claim. *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987). In particular, Starlight does not identify the requisite "specific business relationship" disrupted by Regal. *Logtale, Ltd. v. IKOR, Inc.*, No. 11-5452, 2013 WL 4427254, at *6 (N.D. Cal. Aug. 14, 2013) ("California courts have consistently held that . . . the plaintiff must identify a specific business relationship that the defendant disrupted"). It fails to allege facts—such as counterparties or specific contracts—sufficient to allege actual disruption of prospective business relationships with film distributors or any other party. *See Sybersound Records*, 517 F.3d at 1151 (affirming dismissal because plaintiff "failed to plead facts either showing or allowing the inference of actual disruption to its relationship with the Customers . . . for example, that it lost a contract nor that a negotiation with a Customer failed"). As a result, Starlight's intentional interference claim fails for this reason as well.

**CONCLUSION**

For the reasons set forth above, Starlight's Complaint should be dismissed in its entirety.

Dated: August 20, 2014

Respectfully submitted,

Case No. 2:14-cv-05463-R-AS

By: /s/ Christopher T. Casamassima
Christopher T. Casamassima

WILMER CUTLER PICKERING HALE AND DORR LLP

Attorney for Defendant
REGAL ENTERTAINMENT GROUP

- 19 -
NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)
Case No.: 2:14-cv-05463-R-AS