Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone:  (213) 443-5300
Facsimile:  (213) 443-5400

Leon B. Greenfield (*pro hac vice*)
leon.greenfield@wilmerhale.com
Eric Mahr (*pro hac vice*)
eric.mahr@wilmerhale.com
Jeffrey D. Ayer (*pro hac vice*)
jeffrey.ayer@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  (202) 663-6000
Facsimile:  (202) 663-6363


Attorneys for Defendant
*Regal Entertainment Group*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| STARLIGHT CINEMAS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>REGAL ENTERTAINMENT GROUP and<br>DOES 2 through 50, inclusive,<br><br>                    Defendants. | Case No. 2:14-cv-05463-R-AS<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ALL CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hon. Manuel L. Real |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................. ii

INTRODUCTION ...........................................................................1

ARGUMENT         ...........................................................................2

I.      STARLIGHT FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR
        RELIEF UNDER THE CARTWRIGHT ACT.............................2

        A.      Starlight Does Not Adequately Allege Agreements.........................2

        B.      Starlight Has Failed to Allege Facts That Satisfy the Legal
                Standard For Clearance Claims. ..........................................7

        C.      Starlight Fails to Allege a Cognizable Geographic Market. .............9

        D.      Starlight Fails to Allege Harm to Competition................................11

II.     STARLIGHT'S CLAIMS UNDER THE UCL AND FOR
        INTENTIONAL INTERFERENCE FAIL. .................................15

III.    STARLIGHT SHOULD NOT BE GRANTED LEAVE TO
        AMEND ITS COMPLAINT.......................................................16

CONCLUSION         ...........................................................................17

REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007) ................................................................ 3, 4, 6

*Big Bear Lodging Association v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999) ..................................................... 10, 11

*Blue Sky Color of Imagination, LLC v. Mead Westvaco Corp.*,
    No. 10-02175, 2010 WL 4366849 (C.D. Cal. Sept. 23, 2010) .......................... 14

*Cascades Computer Innovation LLC v. RPX Corp.*,
    No. 12-01143, 2013 WL 316023 (N.D. Cal. Jan. 24, 2013) ................................ 3

*Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*,
    20 Cal. 4th 163(1999) .................................................................. 15

*Central Coast Pipe Lining, Inc. v. Pipe Shield USA, Inc.*,
    No. 13-00639, 2013 WL 1703023 (C.D. Cal. Apr. 19, 2013) ...................... 3, 16

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) .......................................................... 15

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758(2010) ................................................................ 14

*Credit Bureau Services v. Experian Information Solutions, Inc.*,
    No. 12-2146, 2013 U.S. Dist. LEXIS 94313 (C.D. Cal. June 28, 2013) ......... 3, 6

*G.H.I.I. v. MTS, Inc.*,
    195 Cal. Rptr. 211 (App. 1983) ...................................................... 6

*International Norcent Technology v. Koninklijke Philips Electronics N.V.*,
    No. 07-00043, 2007 U.S. Dist. LEXIS 89946 (C.D. Cal. Oct. 29, 2007),
    *aff'd*, 323 F. App'x 571 (9th Cir. 2009) ............................................. 4

*Kendall v. Visa USA, Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................ 3, 4

*Leadsinger, Inc. v. BMG Music Publishing*,
    512 F.3d 522 (9th Cir. 2008) .......................................................... 16

REPLY IN SUPPORT OF MOTION TO DISMISS

*Marin County Board of Realtors, Inc. v. Palsson*,
    16 Cal. 3d 920 (1976).................................................................................. 14

*Marsh v. Anesthesia Services Medical Group, Inc.*,
    200 Cal. App. 4th 480 (2011)....................................................................... 14

*Newcal Industries, Inc. v. Ikon Office Solutions*,
    513 F.3d 1038 (9th Cir. 2008)...................................................................... 10

*Omega Environmental, Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997)...................................................................... 13

*Orson, Inc. v. Miramax Film Corp.*,
    9 F.3d 1358 (3d Cir. 1996).......................................................................9, 14

*Paddock Publications, Inc. v. Chicago Tribune, Co.*,
    103 F.3d 42 (7th Cir. 1996).............................................................. 12, 13, 14

*PNY Technologies, Inc. v. SanDisk Corp.*,
    No. 11-04689, 2014 U.S. Dist. LEXIS 58108 (N.D. Cal. Apr. 25, 2014)........... 7

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
    No. 12-2102, 2013 WL 3936394 (C.D. Cal. July 30, 2013)......................... 6, 14

*Ralph C. Wilson Industries, Inc. v. American Broadcasting Cos.*,
    598 F. Supp. 694 (N.D. Cal. 1984), *aff'd*, 794 F.2d 1359 (9th Cir. 1986) ...... 7, 8

*Reading International, Inc. v. Oaktree Capital Management, LLC*,
    No. 03-1895, 2007 WL 39301 (S.D.N.Y. Jan. 8, 2007) ........................... 7, 8, 12

*Redwood Theatres, Inc. v. Festival Enterprises, Inc.*,
    200 Cal. App. 3d 687 (1988)...............................................................*passim*

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987)....................................................................4, 13

*Sidibe v. Sutter Health*,
    -- F. Supp. 2d --, No. 12-04854, 2014 WL 2859206 (N.D. Cal. June 20,
    2014)...................................................................................................... 10, 11

*Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*,
    No. 97-5499, 2004 WL 691680 (S.D.N.Y. Mar. 31, 2004), *aff'd*, 124 F.
    App'x 73 (2d Cir. 2005) ..................................................................................12

REPLY IN SUPPORT OF MOTION TO DISMISS

*Somerville v. Stryker Orthopaedics*,
    No. 08-02443, 2009 U.S. Dist. LEXIS 3052 (N.D. Cal. Jan. 16, 2009).......... 3, 5

*Stanislaus Food Products Co. v. USS-POSCO Industries*,
    No. 09-00560, 2013 U.S. Dist. LEXIS 21744 (E.D. Cal. Feb. 15, 2013).......... 18

*Theee Movies of Tarzana v. Pacific Theatres, Inc.*,
    828 F.2d 1395 (9th Cir. 1987)...................................................... 5, 7, 8

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    No. 12-2582, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013).................................. 3

*Walker v. GEICO General Insurance Co.*,
    No. 06-1703, 2007 WL 499660 (E.D. Cal. Feb. 12, 2007)................................ 17

*West Boylston Cinema Corp. v. Paramount Pictures Corp.*,
    No. 98-00252, 2000 Mass. Super. LEXIS 628 (Sept. 18, 2000) ..................... 7, 8

REPLY IN SUPPORT OF MOTION TO DISMISS

# **INTRODUCTION**

Starlight's Opposition cannot overcome the overarching flaw in its Complaint:  It alleges nothing more than that some (unidentified) film distributors have made business decisions not to license two neighboring theatres to play the same film at the same time.  As Starlight does not dispute, courts routinely uphold this common industry practice against challenges by theatre owners that—like Starlight—have not prevailed in competition to license individual films as often as they would like.

Against this backdrop, Starlight has no persuasive response to Regal's showing that Starlight's Cartwright Act claim fails for four independently sufficient reasons:

*First*, Starlight does not sufficiently allege clearance agreements between Regal and film distributors.  Indeed, it never disputes that the Complaint fails to identify facts regarding a *single* specific clearance agreement between Regal and *any* distributor.  Instead, it baldly asserts that it is irrational for distributors independently to choose to license particular films to either the Regal Corona Crossing or the neighboring Starlight Dos Lagos—but not both simultaneously. Therefore, Starlight concludes, the distributors must have been coerced into clearance agreements with Regal.  But Starlight points to no factual allegations plausibly suggesting that the distributors were coerced, much less that their licensing practices contravene their independent business interests.

*Second*, even if Starlight had sufficiently alleged clearance agreements, Starlight does not dispute that the case law consistently rejects antitrust challenges to such agreements.  Instead, it tries to escape this precedent by relying almost entirely on a single California decision—*Redwood Theatres*.  But that case concerned agreements that differed from the agreements alleged here in a critical respect.  *Redwood* involved agreements under which film distributors promised to license all (or nearly all) of their films output to a single theatre

- 1 -

company, thereby depriving competing theatres of the opportunity to compete to show the distributors' slate of films.  Here, by contrast, Starlight asserts only the sort of film-by-film clearance agreements, under which a film playing at one theatre does not play at a neighboring theatre, which courts have consistently found lawful.  Starlight does not allege any agreement prohibiting it from competing on a film-by-film basis to win the exclusive license to exhibit any film it wishes to show.

*Third*, as Starlight admits, it bears the burden to allege plausibly a cognizable geographic market.  Starlight's naked assertion that the relevant market is co-extensive with the Corona city lines is plainly inadequate.

*Fourth*, Starlight does not allege harm to consumers—rather than just harm to itself—a required element for a Cartwright Act claim.  Its Opposition does not and cannot demonstrate how consumers have been harmed because two theatres offer movie-goers different lineups of first-run films, rather than the same ones.  Starlight cannot point to a single allegation that consumers suffer from higher prices, lower quality, denial of opportunities to view the films they wish to see, or any other type of harm as a result of the alleged clearance agreements.

Finally, Starlight's UCL and intentional interference claims cannot survive the fatal pleading deficiencies that doom its Cartwright Act allegations.  Accordingly, the Court should dismiss with prejudice Starlight's UCL and intentional interference claims, along with its Cartwright Act claim.

## ARGUMENT

## I.   STARLIGHT FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF UNDER THE CARTWRIGHT ACT.

### A.   Starlight Does Not Adequately Allege Agreements.

Starlight contends that it has satisfied its obligation to plead facts plausibly suggesting agreements for its Cartwright Act claim based on a bare allegation that "Regal demands, and film distributors agree to, exclusive clearances for first-

- 2 -

run films" and a few other stray assertions in its Complaint.  (*See* Doc. No 25, Starlight's Opposition to Regal Entertainment Group's Mot. to Dismiss at 6-7 ("Opp.").)  Starlight's allegations are plainly insufficient.[1]

To begin, Starlight claims that it has no obligation to satisfy the basic pleading requirement to identify the who, what, when, and where of agreements between Regal and distributors.  (Opp. at 7.)  But both the Ninth Circuit and district courts therein have consistently rejected claims under Section 1 of the Sherman Act and the Cartwright Act where the complaint did not specify those facts.  *See Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008); *Credit Bureau Servs. v. Experian Info. Solutions, Inc.*, No. 12-2146, 2013 U.S. Dist. LEXIS 94313, at *20 (C.D. Cal. June 28, 2013) (relying in part on *Kendall* to dismiss Sherman Act claim because plaintiff did not allege "who, did what, to whom (or with whom), where, and when?"); *Somerville v. Stryker Orthopaedics*, No. 08-02443, 2009 U.S. Dist. LEXIS 3052, at *7-8 (N.D. Cal. Jan. 16, 2009) (dismissing Cartwright Act claim where "complaint fails to allege the time, place or the co-conspirators actually involved in the alleged conspiracy.").[2]

Starlight argues that the Ninth Circuit's decision in *Kendall* does not govern here because the *Kendall* plaintiffs obtained some discovery before filing their

---

[1]  Starlight appears in some places to suggest that the *Twombly* pleading standard might not apply to its claims under California substantive law.  (Opp. at 5, 13.)  In the end, however, it seems to accept that federal pleading standards apply.  (*Id.* at 5-6.)  To the extent Starlight may argue that federal pleading rules do not apply, it is incorrect.  *See, e.g., Central Coast Pipe Lining, Inc. v. Pipe Shield USA, Inc.*, No. 13- 00639, 2013 WL 1703023, at *2, *5-6 (C.D. Cal. Apr. 19, 2013) (applying *Twombly* standard in dismissing Cartwright Act claim); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. 12-2582, 2013 WL 368365, at *2 (N.D. Cal. Jan. 29, 2013) (same).

[2]  *See also Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-01143, 2013 WL 316023, at *6 (N.D. Cal. Jan. 24, 2013) (dismissing antitrust claims because plaintiff did "not answer [any of] the basic questions: who, did what, to whom (or with whom), where, and when?") (quoting *Kendall*, 518 F.3d at 1048).

- 3 -

amended complaint.  (Opp. at 7.)  But nothing in *Kendall* suggests that the requirement that an antitrust complaint "answer the basic questions: who, did what, to whom (or with whom), where, and when," 518 F.2d at 1048, applies only if the plaintiff has taken pre-complaint discovery.  Indeed, *Kendall* relies on *Twombly*, and plaintiffs in *Twombly* did not obtain pre-complaint discovery.  *Id.* at 1047.  Moreover, district courts in the Ninth Circuit have repeatedly relied on *Kendall*'s articulation of pleading requirements in antitrust cases without pre-complaint discovery.  *See supra* note 2 and surrounding text.  At bottom, Starlight argues that it is entitled to discovery to see if it can develop the facts required to plead adequately a Cartwright Act claim (Opp. at 7), but that of course is not how pleading works in the federal courts.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming the district court's dismissal of the second amended complaint without discovery because "[t]he purpose of F[ed]. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery").

Next, Starlight claims it has alleged the requisite facts regarding specific agreements by pleading that there are a "small number of distributors," that all distributors have entered into clearance agreements with Regal for "the vast majority of first-run films," that clearance agreements have been in place "[b]eginning within four (4) years prior to this complaint," and that the agreements cover Corona.  (Opp. at 7.)  But taken together, these allegations amount to nothing more than a bare supposition that most films licensed to the Regal Corona Crossing during the relevant period are subject to clearance agreements.  They do not provide specifics about *any* particular alleged illegal clearance agreement, and are therefore plainly insufficient.  *International Norcent Tech. v. Koninklijke Philips Electronics N.V.*, No. 07-00043, 2007 U.S. Dist. LEXIS 89946, at *39 (C.D. Cal. Oct. 29, 2007) (granting motion to dismiss because "a mere allegation that parties entered into an agreement to restrain trade

- 4 -

does not suffice to state a § 1 claim"), *aff'd*, 323 F. App'x 571 (9th Cir. 2009); *Somerville*, 2009 U.S. Dist. LEXIS 3052, at *8 (dismissing complaint where there were no factual allegations to indicate terms of alleged agreement with unnamed co-conspirators).

Notwithstanding that fatal defect, Starlight contends that agreements can be inferred because distributors are supposedly acting against their independent business interests in choosing to license certain films exclusively to the Regal Corona Crossing, and not offer redundant licenses to the nearby Starlight Dos Lagos.  (Opp. at 6-7.)  Starlight points to two allegations to support this argument, but neither plausibly suggests that distributors have been acting against their self-interest.

First, Starlight alleges that distributors wish to "play their first-run films on as many screens as possible."  (Opp. at 6, 19-20 (citing Compl. ¶ 16).)  Assuming that is true, there are still no facts from which the Court can reasonably infer that the distributors are acting against their self-interest in not also licensing to the Dos Lagos films that are playing at the Corona Crossing.  To the contrary, Starlight alleges that the Corona Crossing has *18* screens (Compl. ¶ 18) and does not allege that the Corona Crossing is unable to offer the optimal number of screens for any particular film in the relevant geographic area.[3]  Second, Starlight cites its allegation that distributors have rejected some (unspecified) number of Starlight offers to license first-run films, even though Starlight asserts that it is "confident" that "on information and belief" (with no specific examples) it has offered more

---

[3]     Indeed, Starlight offers no explanation why a rational distributor would choose to take on the added burden and expense of dealing with two neighboring theatres, when it can access sufficient multiple screens by licensing only one. *See Theee Movies of Tarzana v. Pacific Theatres, Inc.*, 828 F.2d 1395, 1399-1400 (9th Cir. 1987) (explaining clearance agreements promote optimal distribution at minimal cost by allowing distributors to "reach the largest number of viewers with the smallest number of movie prints").

REPLY IN SUPPORT OF MOTION TO DISMISS

advantageous terms than has Regal.  (Opp. at 6 (quoting Compl. ¶ 23).)  But without supporting *factual* allegations, neither Starlight's professed confidence, nor a conclusory allegation based on that professed confidence, is sufficient to suggest plausibly any clearance agreement between Regal and distributors.  Instead, that allegation is just as consistent with distributors making a rational, independent decision to license just one theatre rather than both neighboring theatres—whether or not Starlight might believe it made a more attractive offer for the license.[4]

Finally, Starlight argues that the Court should not dismiss its Complaint because the Court would be impermissibly choosing between two plausible explanations for why distributors do not license films to play simultaneously at the Regal Corona Crossing and the Starlight Dos Lagos.  (Opp. at 7-8.)  However, Starlight has not satisfied its obligation to "nudge [its] claims [of agreements] across the line from the conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also id.* at 557 (stating Section 1 complaint must allege facts "plausibly suggesting (not merely consistent with) agreement"); *Credit Bureau Servs.*, 2013 U.S. Dist. LEXIS 94313, at *27 (dismissing complaint where there were multiple explanations for conduct and plaintiff failed to place its allegations "'in a context that raises a suggestion of a preceding agreement'")

---

[4]     Starlight also baldly asserts that Regal somehow used economic power to coerce distributors into acquiescing to clearance agreements (Compl. ¶ 1), which it argues is sufficient to allege an agreement.  (Opp. at 8-9.)  Starlight's allegations fail because it alleges absolutely no *facts* to support its supposition that Regal actually strong-armed any distributors.  *See Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. 12-2102, 2013 WL 3936394, at *2-4 (C.D. Cal. July 30, 2013) (stating conclusory allegations that defendant used its monopoly power to force customers to enter into agreements were "patent legal conclusions that are not entitled to a presumption of truth"); *G.H.I.I. v. MTS, Inc.*, 195 Cal. Rptr. 211, 217-18 (App. 1983) (rejecting Cartwright Act claim where plaintiff alleged only that defendants enjoyed economic leverage and complaint contained no *specific* allegations of actual coercion).

REPLY IN SUPPORT OF MOTION TO DISMISS

1  (quoting *Twombly*, 550 U.S. at 557).  As a result, the Court need not choose

2  between competing explanations.  It should dismiss the Complaint.

3  **B.  Starlight Has Failed to Allege Facts That Satisfy the Legal**

4  **Standard For Clearance Claims.**

5  Courts consistently hold clearance agreements—*i.e.*, agreements assigning

6  a movie theatre in a given area the exclusive rights to play a particular film at a

7  particular date and time—to be legal when movie theatres are in substantial

8  competition with one another and the agreements are not excessive in geographic

9  or temporal scope.  *See Theee Movies of Tarzana*, 828 F.2d at 1399; *Reading*

10  *Int'l, Inc. v. Oaktree Capital Mgmt., LLC*, No. 03-1895, 2007 WL 39301, at *50

11  (S.D.N.Y. Jan. 8, 2007); *Ralph C. Wilson Indus., Inc. v. American Broad. Cos.*,

12  598 F. Supp. 694, 705 (N.D. Cal. 1984), *aff'd*, 794 F.2d 1359 (9th Cir. 1986);

13  *West Boylston Cinema Corp. v. Paramount Pictures Corp.*, No. 98-00252, 2000

14  Mass. Super. LEXIS 628, at *53-57 (Sept. 18, 2000).

15  Starlight does not seriously contest that this legal standard applies to

16  clearance claims.  Nor does Starlight dispute that its Dos Lagos theatre is in

17  substantial competition with Regal's Corona Crossing theatre, or claim the

18  alleged clearances are excessive in scope.  Instead, Starlight uses irrelevant

19  arguments in an effort to evade application of the clear rule that condemns its

20  Cartwright Act claim.

21  *First*, Starlight contends that the *legal standard* governing clearance claims

22  is somehow inapplicable because it comes from decisions awarding summary

23  judgment rather than on motions to dismiss.  Starlight is incorrect.  *Theee Movies*

24  and the other cases announced a legal standard that applies to all clearance

25  claims.  But the procedural posture at which this legal standard was developed is

26  irrelevant; Starlight must at this stage at least allege facts that could plausibly

27  meet that standard.  *See PNY Techs., Inc, v. SanDisk Corp.*, No. 11-04689, 2014

28  U.S. Dist. LEXIS 58108, at *16, *24 (N.D. Cal. Apr. 25, 2014) (dismissing

- 7 -

plaintiff's exclusive dealing claims based on the standard outlined in summary judgment cases; while "there is no expectation that [plaintiff] *prove* anything [at the motion to dismiss stage]… [plaintiff] needs to sufficiently *allege* facts supporting its claims."). Because Starlight's Complaint concedes that the Dos Lagos and Corona Crossing theatres are in substantial competition with each other and fails to allege that the alleged clearance agreements are excessive in scope, it has not plausibly alleged a Cartwright Act violation.[5]

*Second*, Starlight relies on a single California case, *Redwood Theatres, Inc. v. Festival Enterprises, Inc.*, 200 Cal. App. 3d 687 (1988), to argue that Regal's alleged conduct here is outside the legal rule governing clearances. But *Redwood Theatres* involved an entirely different type of agreement than the clearance agreements Starlight tries to allege here. In *Redwood Theatres*, the plaintiff theatre chain alleged a pervasive exclusive dealing arrangement involving all or almost all of the film output of major film distributors. *Id.* at 693. In particular, it claimed that the film distributors had agreed with the defendant theatre company in advance to license "all or substantially all" of their first-run films to the defendant in several California towns. *Id.* Accordingly, the basis for the plaintiff's claim in *Redwood Theatres* was that it had been illegally foreclosed from the opportunity to compete on a film-by-film basis to win the exclusive license. *Id* at 693-94.

---

[5] Starlight argues that the film industry has somehow "evolved" in a way that undermines the justification for "clearances," (Opp. at 12 & n.2 (citing Compl. ¶ 15)), although the only specific change it cites is that movie theatres today allegedly rarely, if ever, pay to promote films. (*Id.*) Starlight, however, fails to explain why the supposed decline of that practice eliminates all (common-sense) business reasons for clearances, and how its assertion can be reconciled with the recent cases rejecting clearance claims under the substantial competition standard. *See Theee Movies*, 828 F.2d at 1399-1400 (outlining procompetitive justifications for clearances); *Reading Int'l,* 2007 WL 39301, at *15; *Ralph C. Wilson*, 598 F. Supp. at 705; *West Boylston Cinema*, 2000 Mass. Super. LEXIS 628, at *53.

Here, Starlight alleges nothing of that sort.  Instead, the only allegation of an agreement between Regal and anyone is in paragraph 24 of its Complaint and concerns supposed clearance agreements; that is, "exclusivity provisions in connection with film licenses that bar licensing the Starlight Theater is [sic] Corona to play films day and date with Regal Theater."  (Compl. ¶ 24.)  In other words, when distributors choose to license to the Regal Corona Crossing *a particular film*, that *particular film* does not also play at Starlight's Dos Lagos.  (*See id*. ¶ 15 (defining "'day and date' play" as "licens[ing] a film to play . . . at the same time . . . with any other theatre in a zone.").  Unlike the plaintiff in *Redwood Theatres*, Starlight never alleges that Regal has entered *any* agreements with *any* distributor preventing Starlight from competing on a film-by-film basis to win its own exclusive licenses for the Dos Lagos.  Far from being "a similar (if not identical) context," as Starlight argues (Opp. at 10), the claim at issue in *Redwood Theatres* is inapposite to Starlight's allegations here.  *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1368, 1371-72 (3d Cir. 1996) (distinguishing agreements to grant first-run licenses only to a single theatre from clearance agreements where a distributor agrees to license exclusively only the particular film subject to the clearance agreement, and applying *Theee Movies* and other clearance precedent to reject clearance claim).

*Finally*, Starlight argues that *Redwood Theatres* establishes standards under the Cartwright Act that differ from those under the Sherman Act.  In fact, *Redwood Theatres* makes clear that "cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act."  200 Cal. App. 3d at 694; *see also id.* ("Since the case law under the Cartwright Act is comparatively sparse, we will also rely chiefly on federal decisions.").  Here, the case law under the Sherman Act clearly condemns Starlight's garden-variety clearance claims.

**C.**    **Starlight Fails to Allege a Cognizable Geographic Market.**

Starlight acknowledges that it must adequately allege a relevant geographic

market to avoid dismissal.  (Opp. at 13.)  But it has alleged nothing beyond the naked conclusion that "[t]he relevant geographic market for purposes of antitrust claims in this action is Corona, California."  (Compl. ¶ 20.)  That is insufficient.

Starlight tries to obfuscate the issue by claiming that Regal contends Starlight must make extensive allegations regarding technical economic analysis (Opp. at 14-15), but this is a red herring.  Starlight obviously is not required to *prove* a geographic market at this stage.  But Ninth Circuit precedent *does* require that Starlight allege some plausible reason to believe that the antitrust market in which the Regal Corona Crossing and Starlight Dos Lagos compete happens to be co-extensive with the city bounds of Corona—rather than determined by highway traffic patterns, natural landmarks, or other common determinants of a theatre-goer's movements.  *See, e.g.*, *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1105 (9th Cir. 1999) (upholding dismissal of rule of reason claims because, inter alia, geographic market failed sufficiently to allege "the area of effective competition in which buyers of [the relevant] products can find alternate sources of supply"); *Sidibe v. Sutter Health*, -- F. Supp. 2d --, No. 12-04854, 2014 WL 2859206, at *13 (N.D. Cal. June 20, 2014) (dismissing complaint where plaintiff's geographic market definition was "unsupported by non-conclusory factual allegations").  Starlight alleges not one sentence suggesting why, in a dense suburban area, where one town runs into another, theatres in Corona do not compete for patronage with theatres in Riverside, Yorba Linda, Eastvale, or other surrounding towns.  Absent such factual allegations, Starlight's bare assertion of a Corona-only geographic market simply defies plausibility and is inadequate.[6]

---

[6]    Starlight's reliance on *Newcal Industries, Inc. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008), is misplaced.  (Opp. at 14.)  Nothing in that decision purports to over-rule *Big Bear* or suggests that dismissal is not ripe when, as in *Big Bear* and here, a plaintiff's bare geographic market definition is insufficient to create a plausible basis to believe the plaintiff will be able to prove its

- 10 -

The recent decision in *Sidibe* is directly on point.  There, plaintiffs alleged that geographic markets for the sale of inpatient hospital services to commercial health plans were co-extensive with "hospital service areas" (HSAs), regions defined in a well-established health care industry publication.  2014 WL 2859206, at *11.  In dismissing for failure adequately to allege a relevant geographic market, the Court wrote:  "Plaintiffs do not explain why or how HSAs are roughly congruent to the boundaries of the geographic markets . . . .  Plaintiffs must identify the relevant market and support their allegations with some factual allegations to render them plausible.  They have not done so."  *Id.*

The same is true here.  Because Starlight failed to allege even a single fact suggesting why the relevant geographic market in this case happens to be co-extensive with the Corona city lines, the Complaint should be dismissed.

**D.      Starlight Fails to Allege Harm to Competition.**

Starlight's argument that it has alleged market-wide harm to competition from alleged clearance agreements is not premised on any notion that consumers are directly harmed because the same films do not play at both neighboring theatres.  Rather, Starlight now appears to argue that its Dos Lagos theatre will be driven out of business because distributors are choosing not simultaneously to license the Dos Lagos films that are playing at the Regal Corona Crossing.  (Opp. at 16-18.)  This theory is not cognizable as a matter of law—even putting aside that Starlight never alleges in its Complaint that the Dos Lagos will be leaving the marketplace.

It is obvious why Starlight has taken this tack.  Starlight cannot dispute that it has failed to allege consumers have suffered harm as the result of alleged clearance agreements.  In particular, Starlight never contests its failure to allege

proffered market.  Moreover, Starlight does not explain why the geographic market allegations in *Big Bear* were any more facially implausible than those Starlight makes here.

1   that ticket prices are higher, the quality of the movie-going experience is lower,

2   patrons in the relevant geographic area have not been able to see the films they

3   wish to see, or that customers are suffering any other type of competitive harm

4   because the offerings at Corona Crossing and Dos Lagos are not redundant.[7]

5   This failure alone is dispositive of Starlight's Cartwright Act claim. *Six West*

6   *Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No. 97-5499, 2004 WL

7   691680, at *10 (S.D.N.Y. Mar. 31, 2004) (holding that lack of competitive harm

8   defeated antitrust claim involving clearance agreements), *aff'd*, 124 F. App'x 73

9   (2d Cir. 2005); *Reading Int'l*, 2007 WL 39301, at *14 (same).

10         It is once again crucial to separate Starlight's argument from what it

11   actually alleges.  Notwithstanding its misplaced reliance on *Redwood Theatres*

12   (*see supra* at 8-9), Starlight does not even try to allege any agreements to deprive

13   it of the opportunity to compete on the merits to win the license to first-run films

14   for its Dos Lagos theatre.  Indeed, Starlight admits that the Dos Lagos competes

15   for—and receives—its own licenses to first-run films, which the Corona Crossing

16   does not exhibit simultaneously.  (Compl. ¶¶ 19, 22-23.)  Starlight complains

17   only that the supposed clearance agreements provide that when the Regal Corona

18   Crossing wins the right to license a particular film, the distributor will not also

19   license *that same film* to Dos Lagos at the same time.

20         That a party does not fare as well as it would have liked in competition for

21   the exclusive right to distribute a supplier's product (here first-run films) in a

22   given geographic area does not constitute the harm to competition and consumers

23   required to make an antitrust claim.  In *Paddock Publications, Inc. v. Chicago*

24   *Tribune, Co.*, 103 F.3d 42 (7th Cir. 1996), for example, the *Chicago Herald*, a

25

26   _____

27   [7]      Starlight does not even attempt to dispute Regal's showing that the only
     specific injury to consumers it tries to allege—that movie patrons may not be
28   able to see their first choice film at their first choice theatre—is not cognizable
     competitive harm.  (Doc. No. 21, Regal Br. at 14-15.)

REPLY IN SUPPORT OF MOTION TO DISMISS

smaller newspaper, alleged that the *Chicago Sun-Times* and *Chicago Tribune*
entered illegal exclusive distribution agreements with newspaper content
providers that denied the *Herald* access to the same "best" comics and features
that its larger rivals obtained. *Id.* at 44-45.  In upholding dismissal of that claim,
the Seventh Circuit found that while the *Herald* might have suffered harm from
its failure to bid successfully for exclusive distribution contracts of its own, the
*Herald* had not alleged cognizable harm to *competition* or *consumers*.  The court
observed that "[c]ompetition-for-the-contract is a form of competition that
antitrust laws protect rather than proscribe." *Id.* at 45.  And far from harming
consumers, competition among the newspapers for exclusive rights to content
brought variety and diversity to the marketplace that actually *benefitted*
consumers. *Id.* ("A market in which every newspaper carried the same stories,
columns, and cartoons would be a less vigorous market than the existing one.").
The court concluded that the *Herald* "should try to outbid the *Tribune* and *Sun-
Times* in the marketplace, rather than to outmaneuver them in court."  *Id.* at 47.

So it is here.  Starlight does not allege that any agreements restrict it from
competing for its own exclusive licenses to first-run films at the Dos Lagos.  If
Starlight wishes to obtain more first-run films, its proper course is to compete
more effectively.

But the fact that Starlight might wish to win more film-by-film
competitions does not transform any exclusive licenses into anticompetitive
agreements that violate the Cartwright Act.  *See*, *e.g.*, *Omega Envtl., Inc. v.
Gilbarco, Inc.*, 127 F.3d 1157, 1164 (9th Cir. 1997) (upholding judgment against
manufacturer's antitrust challenge to exclusive contracts and observing that "a
competing manufacturer need only offer a better product or a better deal to
acquire [distributors'] services"); *Rutman Wine*, 829 F.2d at 734 (upholding
dismissal of antitrust claims brought by terminated distributor and observing that
"while [the distributor] clearly pleads injury to itself, its conclusion that

- 13 -

competition has been harmed thereby does not follow"); *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, No. 12-2102, 2013 WL 3936394, at *13 (C.D. Cal. July 30, 2013) (relying on *Paddock*, among other authority, and dismissing antitrust challenge to exclusive contracts where complaining supplier was free to compete for its own exclusive contracts).[8]  Indeed, as in *Paddock*, exclusive film licenses plainly benefit consumers by increasing the variety of films available for movie-goers relative to a world in which both the Corona Crossing and Dos Lagos exhibited the same films.  *See Orson*, 79 F.3d at 1372 (finding that competition was enhanced where clearances increased the variety of films from which consumers were able to choose).

---

[8]     Starlight's argument that under California antitrust law, "'[a]n anticompetitive practice is not to be tolerated merely because the victim is just one merchant whose business is so small his destruction makes little difference to the economy,'" is inapposite.  (Opp. at 17 (quoting *Marin Cnty. Bd. of Realtors, Inc. v. Palsson,* 16 Cal. 3d 920, 935 (1976)).).  *Marin County* recognized that "[a]ntitrust laws are designed primarily to aid the consumer," *id.*, and the decision relied on the competitive danger to consumers, *id.* at 936-37, and not harm to competitors standing alone.  In *Clayworth v. Pfizer, Inc.*, the California Supreme Court recently made clear that the Cartwright Act is "about the protection of competition, not competitors."  49 Cal. 4th 758, 783 (2010) (internal quotations marks omitted); *see also Marsh v. Anesthesia Servs. Med. Grp., Inc.* 200 Cal. App. 4th 480, 495 (2011) ("A complaint must allege facts from which injury to market-wide competition can be inferred.") (internal quotations marks omitted).

    Similarly, notwithstanding Starlight's reliance on *Blue Sky Color of Imagination, LLC v. Mead Westvaco Corp.,* No. 10-02175, 2010 WL 4366849 (C.D. Cal. Sept. 23, 2010), the relevant issue is not whether Starlight has alleged competitive harm with requisite specificity, but the fact it has alleged no cognizable harm to competition at all.  (Opp. at 16-17.)

1    **II.    STARLIGHT'S CLAIMS UNDER THE UCL AND FOR**
2         **INTENTIONAL INTERFERENCE FAIL.**

3         Starlight's arguments regarding its UCL and intentional interference claims
4    are meritless, and those claims should be dismissed as well.

5         As to the UCL claim, Starlight asserts that even if its allegations do not
6    constitute an "unlawful" practice under the Cartwright Act, it has alleged a claim
7    under the "unfair" component of the UCL.  But Starlight acknowledges the
8    similarity between "unfair" and "unlawful" claims grounded in antitrust theories:
9    "[T]he word 'unfair' . . . means conduct that threatens an incipient violation of an
10   antitrust law, or violates the policy or spirit of one of those laws because its effects
11   are comparable to or the same as a violation of the law, or otherwise significantly
12   threatens or harms competition."  (Opp. at 18-19 (quoting *Cel-Tech Commc'ns,*
13   *Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)).)  *See also Chavez v.*
14   *Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("If the same conduct is
15   alleged to be both an antitrust violation and an 'unfair' business act or practice for
16   the same reason—because it unreasonably restrains competition and harms
17   consumers—the determination that the conduct is not an unreasonable restraint of
18   trade necessarily implies that the conduct is not 'unfair' toward consumers.").
19   Here, Starlight does not allege any basis on which its UCL "unfairness" claim
20   could proceed once its Cartwright Act claim is dismissed.  *Stanislaus Food Prods.*
21   *Co. v. USS-POSCO Indus.*, No. 09-00560, 2013 U.S. Dist. LEXIS 21744, at *38-
22   39 (E.D. Cal. Feb. 15, 2013) (agreeing state claims, including UCL, failed when
23   Sherman and Cartwright Act claims failed).

24        Like its UCL claim, Starlight's intentional interference claim is dependent
25   on its Cartwright Act claim.  Starlight argues that it sufficiently alleged that
26   Regal's conduct was "wrongful" (as required for an intentional interference claim)
27   because it was "not competitively justified;" because Regal "obtain[ed] an
28   unlawful competitive advantage;" and because Starlight "pleaded a Cartwright

- 15 -

claim." (Opp. at 19-20.) But that is just three different ways of arguing that the "wrongful" element for Starlight's intentional interference claim is grounded in a Cartwright Act violation. Starlight points to no other alleged wrongful conduct that could support its intentional interference claim. Accordingly, Starlight's intentional interference claim falls with its Cartwright Act claim.

Lastly, as Regal explained in its opening brief (at 17-18), Starlight's intentional interference claim is also insufficient because it alleges no specific future business relationships that have been disrupted. In its Opposition (at 19-20), Starlight argues—citing no authority—that it need not identify specific relations, but that vague and conclusory allegations suffice. Starlight is wrong for the reasons Regal has already demonstrated. (*See* Regal Br. at 4.)

## III.   STARLIGHT SHOULD NOT BE GRANTED LEAVE TO AMEND ITS COMPLAINT.

Finally, recognizing the infirmities of its thinly pleaded Complaint, Starlight requests leave to amend its Complaint should Regal's motion to dismiss be granted. Leave to amend, however, is not appropriate when amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (denying leave to amend as inappropriate when amendment would be futile). That is the case here.

Nothing Starlight could allege in an amended complaint would change the simple fact that, as Starlight admits, the Starlight Dos Lagos and Regal Corona Crossing theatres are in substantial competition with one another. Accordingly, Starlight cannot overcome the clear precedent regarding clearance claims. This alone renders any amendment futile, regardless of any new allegations Starlight might be able to muster up. *See Central Coast Pipe Lining*, 2013 WL 1703023, at *3 (leave to amend may be denied when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency") (internal quotations marks omitted). Because the antitrust laws do not prohibit

the alleged conduct at issue here—*i.e.*, clearance agreements between competing theatres—amendment cannot save Starlight's claims. *See Walker v. GEICO General Ins. Co.*, No. 06- 1703, 2007 WL 499660, at *5-6 (E.D. Cal. Feb. 12, 2007) (dismissing Cartwright Act claim without leave to amend where Cartwright Act did not prohibit alleged conduct).

## <u>CONCLUSION</u>

For the reasons set forth herein and in Regal's opening brief, the Complaint should be dismissed in its entirety and with prejudice.

Dated:  October 1, 2014                Respectfully submitted,

By: <u>/s/ *Christopher T. Casamassima*</u>
     Christopher T. Casamassima

WILMER CUTLER PICKERING
 HALE AND DORR LLP

Attorney for Defendant
REGAL ENTERTAINMENT GROUP

- 17 -